UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCO D. MARTIN,

                    Petitioner,

v.                                                    CASE NO. 2:15-cv-11207
                                                      HONORABLE ARTHUR J. TARNOW

SHANE JACKSON,

                    Respondent.
_____/

**OPINION AND ORDER
DENYING THE AMENDED HABEAS CORPUS PETITION,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Marco D. Martin filed an amended habeas corpus petition under

28 U.S.C. § 2254.  The pleading challenges Petitioner's state convictions for six

counts of first-degree criminal sexual conduct.  *See* Mich.  Comp. Laws §

750.520b(1)(b)(i) (sexual penetration involving someone who is thirteen, fourteen,

or fifteen years old and a member of the same household).  Petitioner raises eight

claims regarding the trial prosecutor's conduct, the trial court's admission of "other

acts" evidence, his trial and appellate attorneys, the cumulative effect of errors, and

lifetime electronic monitoring.   *See* Am. Pet. (ECF No. 9, PageID.46-51, 57).

Respondent Shane Jackson filed an answer in opposition to the amended

petition.  He argues that Petitioner's claims are procedurally defaulted, not

cognizable on habeas review, or meritless and that the state courts' rejection of

some of Petitioner's issues was not contrary to, or an unreasonable application of, Supreme Court precedent.  *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus (ECF No. 13, PageID.176-78).

The Court agrees that Petitioner's claims do not warrant habeas corpus relief.  Accordingly, the Court will deny the amended petition.  The Court also declines to issue a certificate of appealability, but grants leave to appeal this decision *in forma pauperis*.

## I.  BACKGROUND

The charges against Petitioner arose from allegations that he sexually abused his former girlfriend's son.  He was tried before a circuit court jury in Wayne County, Michigan.  The Michigan Court of Appeals briefly and accurately summarized the evidence at trial as follows:

> Defendant was accused of molesting the complainant, a 13-year-old boy and the son of his girlfriend, by engaging in sexual relations with him over a period of almost two years.  The complainant testified that his mother and defendant had a violent relationship and that he was fearful of telling his mother what was occurring because defendant might cause additional harm to him or his mother.  Defendant testified on his own behalf and denied the sexual abuse.  Rather, he alleged that a male relation of the complainant committed any abuse.

*People v. Martin*, No. 310635, 2013 WL 3771210, at *1 (Mich. Ct. App. July 18, 2013) (unpublished).   The only other witness at Petitioner's trial was the complainant's mother, who testified for the prosecution that several months after she stopped seeing Petitioner, her son acknowledged that Petitioner had sexually abused

2

him.  *See* 4/5/12 Trial Tr. at pp. 36-39, 41-44 (ECF No. 14-7, PageID.626-29, 631-34).

On April 9, 2012, the jury found Petitioner guilty, as charged, of six counts of first-degree criminal sexual conduct.  *See* 4/9/12 Trial Tr. at pp. 67-68 (ECF No. 14-8, PageID.773-74).  The trial court sentenced Petitioner to six concurrent terms of fifteen to sixty years in prison.  *See* 4/25/12 Sentence Tr. at p. 9 (ECF No. 14-9, PageID.790).

In an appeal of right, Petitioner argued through counsel that:  (1) the cumulative effect of the prosecutor's misconduct denied him a fair trial; (2) the trial court erred by allowing the prosecutor to inject other-acts evidence; (3) defense counsel's ineffective assistance deprived him of a fair trial; and (4) the cumulative effect of errors required a new trial.  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion.  *See Martin*, 2013 WL 3771210.

Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court.  On December 23, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Martin*, 495 Mich. 915; 840 N.W.2d 369 (2013) (table decision).

In March of 2015, Petitioner raised four new issues in a motion for relief from judgment.  While that motion remained pending in the state trial court,

Petitioner filed a federal habeas corpus petition, ECF No. 1, and a motion for a stay of the federal proceeding while he pursued state remedies, ECF No. 3.  On April 21, 2015, the United States district judge formerly assigned to this case granted Petitioner's motion for a stay and closed this case for administrative purposes so that Petitioner could pursue post-conviction remedies for his unexhausted claims in state court.  *See* Order (ECF No. 7).

On August 5, 2015, the state trial court denied Petitioner's motion for relief from judgment.  *See People v. Martin*, No. 11-012737-01 (Wayne County Cir. Ct. Aug. 5, 2015) (unpublished); ECF No. 14-13.  Petitioner appealed the trial court's decision without success.  The Michigan Court of Appeals denied leave to appeal because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment.  *See People v. Martin*, No. 331011 (Mich. Ct. App. Apr. 28, 2016) (unpublished); ECF No. 14-14, PageID.1076.

On March 5, 2018, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule. 6.508(D).  *See People v. Martin*, 501 Mich. 980; 907 N.W.2d 549 (2018) (table decision).[1]  Petitioner moved for reconsideration, but the Michigan Supreme Court denied his motion on May 29, 2018, because it did not appear to the court

---

[1]   Justice Kurtis T. Wilder did not participate in the decision because he served on the Michigan Court of Appeals panel.

4

that its previous order was entered erroneously. *See People v. Martin*, 501 Mich.

1084; 911 N.W.2d 686 (2018) (table decision).[2]

On August 16, 2018, Petitioner filed a motion to lift the stay in this case and

an amended habeas corpus petition. *See* ECF Nos. 8, 9, and 9-1. The case was

then reassigned to the undersigned. *See* docket entry dated August 17, 2018. On

December 13, 2018, the Court granted Petitioner's motion to lift the stay and

ordered the Clerk of the Court to serve the amended petition on Respondent. *See*

Order (ECF No. 10). On May 29, 2019, Respondent filed his answer in opposition

to the habeas petition, ECF No. 13, and on July 16, 2019, Petitioner filed a reply to

Respondent's answer, ECF No. 16.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal
>        law, as determined by the Supreme Court of the United
>        States; or

---

[2]  Justice Wilder once again declined to participate in the decision because
he was a member of the Court of Appeals panel.

(2)   resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence
presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of a

state court's factual determinations, 28 U.S.C. § 2254(e)(1), and "review under §

2254(d)(1) is limited to the record that was before the state court that adjudicated

the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.

Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when

"a state-court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

"A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "[o]nly an 'objectively

unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254[.]" *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

## III.  DISCUSSION

### A.  The Prosecutor

Petitioner alleges first that the cumulative effect of the prosecutor's misconduct deprived him of a fair trial.  Petitioner contends that the prosecutor injected issues broader than his guilt or innocence, infringed on his right to a fair trial during closing arguments, and argued facts unsupported by the evidence.  *See* Am. Pet. (ECF No. 9, PageID.46).

#### 1.  Procedural Default

The Michigan Court of Appeals reviewed this claim for "plain error" on direct appeal because Petitioner did not preserve his claim by making a timely, contemporaneous objection to the prosecutor's conduct and requesting a curative instruction.  *See Martin*, 2013 WL 3771210, at *1.  Respondent, therefore, argues that Petitioner's claim is procedurally defaulted.  *See* Answer in Opp'n to Pet. at i, 14-17 (ECF No. 13, PageID.176, 193-96).

"[I]n the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  A court may bypass a procedural-default question if the claim can be resolved easily against the habeas petitioner.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

Petitioner's claim does not warrant habeas relief, and the Court has found it more efficient to address the substantive merits of the claim than to analyze whether the claim is procedurally defaulted.  Accordingly, the Court bypasses the procedural-default analysis and proceeds directly to the merits of Petitioner's claim.

### 2.  Clearly Established Law

The Michigan Court of Appeals stated on review of Petitioner's prosecutorial-misconduct claims that none of the instances of alleged misconduct amounted to plain error that affected Petitioner's substantial rights.  *Martin,* 2013 WL 3771210. at *1.   "On habeas review, 'the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.' "  *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (quoting *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)) (alteration in original).  Consequently, although prosecutors must

8

"refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), prosecutorial-misconduct claims are reviewed deferentially in a habeas case, *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

When the issue is the prosecutor's remarks during closing arguments, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (*per curiam*). In *Darden*, the Supreme Court explained that a prosecutor's improper comments "violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation marks and end citations omitted).

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Id*. (quoting *Serra v. Michigan Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips,* 455 U.S. 209, 219 (1982)). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328

U.S. 750, 776 (1946)).

### 3. Issues Broader than Guilt or Innocence

#### a. Evidence that Petitioner was Unemployed

Petitioner alleges that the prosecutor injected issues broader than his guilt

or innocence by questioning him and the complainant about his lack of a job.

According to Petitioner, the prosecutor's questions portrayed him as a lazy and

shiftless person who was likely to commit the charged offenses. *See* Defendant-

Appellant's Brief on Appeal (ECF No. 14-10, PageID.115-16).[3]

As an example, Petitioner points to the prosecutor's question to the

complainant about whether Petitioner was at work when the complainant's mother

was working outside the home. The complainant answered, "No." *See* 4/4/12 Trial

Tr. at p. 200 (ECF No. 14-6, PageID.515). Later, the prosecutor asked Petitioner

what his source of income was. *See* 4/5/12 Trial Tr. at p. 87 (ECF No. 14-7,

PageID.677). And during closing arguments, the prosecutor stated that the

complainant's mother was the sole source of income in the house. *See* 4/9/12 Trial

Tr. at p. 13 (ECF No. 14-8, PageID.719).

---

[3] The Court has looked to Petitioner's brief in the Michigan Court of Appeals on
direct review as support for his first four habeas claims.

Petitioner argues that whether he was working or gainfully employed was irrelevant and inadmissible.  He maintains that the prosecutor's reasons for eliciting the disputed evidence were to prejudice the jury against him and to make him appear more likely to commit the charged crimes.  *See* Defendant-Appellant's Brief on Appeal (ECF No. 14-10, PageID.825-26).

When viewed in context, however, it appears that the prosecutor was attempting to show that Petitioner had frequent opportunities to abuse the complainant without being discovered or suspected of abuse.   And, as the Michigan Court of Appeals correctly pointed out, "the prosecutor did not in any way imply that [Petitioner] was unemployed and poor, and therefore, had the propensity to commit crimes."  *Martin*, 2013 WL 3771210, at *2.

Furthermore, Petitioner refuted the suggestion that he was unemployed.  He testified on direct examination by defense counsel that he had a job at the post office when he first met the complainant's mother.  *See* 4/5/12 Trial Tr. at 73-74 (ECF No. 14-7, PageID.663-64).  Subsequently, on cross-examination by the prosecutor, Petitioner testified that, after he left the post office, he began working as a security supervisor at Ford Field and that he worked there "approximately 2006, 2007."  He stated that he also tried to put his marketing degree to use by working on several political campaigns.  *See id*. at pp. 87-88, PageID.677-78.

The prosecutor's questions about whether Petitioner had a job were proper, and even if they were not, the error was harmless, given Petitioner's testimony that he was employed, at least parttime, during his relationship with the complainant's mother.  As such, Petitioner has no right to habeas relief on his claim.

### b.  Other-Acts Evidence

Petitioner asserts that the prosecutor also injected issues broader than guilt or innocence by eliciting "other acts" evidence.  *See* Defendant-Appellant's Brief on Appeal (ECF No. 14-10, PageID.826-830).  The "other acts" evidence was testimony that Petitioner had been violent and abusive toward the complainant's mother.  *See, e.g.,* 4/4/12 Trial Tr. at pp. 197, 228 (ECF No. 14-6, PageID.512, 543) (eliciting the complainant's testimony that Petitioner's relationship with the complainant's mother was violent); 4/5/12 Trial Tr. at pp. 30, 33-34, 37 (ECF No. 14-7, PageID.620, 623-24, 627) (the mother's testimony that Petitioner was abusive and violent toward her; that she was afraid of Petitioner and did not want to continue to get beat up; that Petitioner would break into her house after she acquired restraining orders against him; and that one time Petitioner hit her so hard, her tooth went through her lip).

Petitioner's contention that admitting the evidence violated Michigan Rule of Evidence 404(b) and state case law interpreting the evidentiary rule is not a basis for habeas relief.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (stating that

12

"federal habeas corpus relief does not lie for errors of state law"); *see also Pulley v. Harris¸* 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009) (stating, "[t]o the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review").  In short, "state-law violations provide no basis for federal habeas relief." *Estelle v. McGuire,* 502 U.S. 62, 68 n. 2 (1991).  When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68.

Although Petitioner also raises his claim under the Due Process Clause of the Fourteenth Amendment, the evidence was relevant.  It explained why the complainant complied with Petitioner's requests for sexual favors and why he delayed telling anyone about the abuse.  *See, e.g.*, 4/4/12 Trial Tr. at pp. 217 and 231 (ECF No. 14-6, PageID.532, 546) (the complainant's testimony that he was frightened about what would happen if he were to say no to Petitioner); *id*. at p. 218, PageID.533 (the complainant's testimony that he did not tell his mother about the abuse out of fear of Petitioner harming him or his mother).  Additionally, as the Michigan Court of Appeals pointed out, the evidence

> was not admitted to prove the character of defendant, and the probative value of the evidence was not substantially outweighed by unfair prejudice.  It was clear that the evidence of defendant's violent actions in the home of the complainant was presented to show the atmosphere

in which the criminal sexual conduct occurred and that the complainant was fearful that defendant would harm him or his mother if he told his mother about the sexual assaults.   Furthermore, evidence of other uncharged criminal events is admissible to explain the circumstances of the charged offenses because the jury is entitled to know about the full transaction.

*Martin*, 2013 WL 3771210, at *2.  Petitioner has no right to relief on his claim about the prosecutor's injection of "other acts" evidence.

### 4. The Remark about Concocting a Reason

Petitioner alleges that the prosecutor infringed on his right to a fair trial and to have guilt proven beyond a reasonable doubt.  *See* Am. Pet. (ECF No. 9, PageID.46).  This argument derives from the prosecutor's remark that if the jurors wanted to find Petitioner not guilty, they could concoct a reason to do that.  *See* Defendant-Appellant's Brief on Appeal (ECF No. 14-10, PageID.830); *see also* 4/9/12 Trial Tr. at p. 23 (ECF No. 14-8, PageID.729).

The Michigan Court of Appeals correctly concluded on review of Petitioner's claim that, when making the comment, the prosecutor did not shift the burden of proof to Petitioner.  *Martin,* 2013 WL 3771210, at *2.  The prosecutor's remark was another way of suggesting that the evidence against Petitioner was irrefutable and that Petitioner had testified untruthfully.  *Cf.* 4/9/12 Trial Tr. at pp. 17-18 (ECF No. 14-8. PageID.723-4) (the prosecutor's remarks that Petitioner was lying to the jurors about the job he had, that his testimony was preposterous and

incredible, and that, if the jurors believed one word out of Petitioner's mouth, she had a bridge to sell them).

Prosecutors may "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). Even a prosecutor's gratuitous insult and reference to the defendant as a liar does not deprive the defendant of a fair trial. *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988).

Furthermore, the trial court informed the jurors that they should consider only the admissible evidence and that the attorneys' arguments were not evidence. *See* 4/9/12 Trial Tr. at p. 50-51 (ECF No. 14-8, PageID.756-57). Generic instructions such as these mitigated any prejudice caused by a prosecutor's remarks. *See United States v. Gracia*, 522 F.3d 597, 604 (5th Cir. 2008). The trial court also instructed the jurors that the prosecutor had to prove every element of the crime, that Petitioner was not required to prove his innocence or do anything, and if they determined that prosecution had not proven every element of the crime beyond a reasonable doubt, they must find Petitioner not guilty. *See* 4/9/12 Trial Tr. at pp. 49-50 (ECF No. 14-8, PageID.756-57).

The prosecutor's disputed remark did not rise to the level of a constitutional error, and the trial court's instructions to the jury mitigated any prejudice that may

have resulted from the remark.  Accordingly, Petitioner is not entitled to relief on

his claim.

### 5.  Facts not in Evidence

Petitioner's final argument about the prosecutor is that the prosecutor argued

facts that were not supported by the evidence.  *See* Am. Pet. (ECF No. 9,

PageID.46); Defendant-Appellant's Brief on Appeal (ECF No. 14-10, PageID.832-

833).  The basis for this claim is the prosecutor's comment during her rebuttal

argument that "[t]here are children who can be beaten to a pulp, but will still tell

you that they love their parents."  *See* 4/9/12 Trial Tr. at p. 40 (ECF No. 14-8,

PageID.746).  Petitioner argues that, because there was no evidence about the

behavior of battered children, the prosecutor's remark amounted to unsworn

testimony.

Prosecutors may not assert facts that were not admitted in evidence.

*Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000); *Cristini*, 526 F.3d at

901.  But the prosecutor's disputed remark in Petitioner's case was triggered by

defense counsel's closing argument that

> [the complainant] hated [Petitioner]. . . . [Y]et, he liked him. . . .
>
> But if you hate somebody, [the prosecutor] wants you to believe
> that you can have this duality going on inside you; I hate you but I
> want you.   That's difficult for some adults to manage in their own
> personal relationships. But somebody that's 13 . . . .

4/9/12 Trial Tr. at 30 (ECF No. 14-8, PageID.736).  In response, the prosecutor

said:

> Now, he's talking about this duality . . . that goes on inside of someone, that that's impossible to have.  That's not impossible to have, and I think every one of you, as experienced people, having lived a full life, worked, raised families, there is a lot of duality that goes on.  There's a lot that goes on when you say, "you know what, I hate somebody one day, but I still have attachments to him."  That's human nature.  There are conflicts.
>
> *There are children who can be beaten to a pulp, but will still tell you that they love their parents.*  There is nothing abnormal about duality going on inside human beings.

*Id*. at pp. 39-40. PageID.745-46) (emphasis added).

Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and

may fairly respond to arguments made by defense counsel."  *Angel v. Overberg*,

682 F.2d 605, 607–08 (6th Cir. 1982) (citing *Donnelly v. DeChristoforo*, 416 U.S.

637 (1974)).  And when viewed in context, it is clear that the prosecutor was trying

to help the jury understand why the complainant could fear and hate Petitioner at

times, and yet fail to resist Petitioner's sexual advances and permit Petitioner to

come inside the home after Petitioner had moved out of the house.

As explained by the Michigan Court of Appeals:  "The prosecutor did not

argue that she had special knowledge, but argued that such duality was common,

and as an extreme example stated that children who were beaten by their parents

still had this duality of feelings toward their parents."  *Martin*, 2013 WL 3771210,

at *2.  The Court of Appeals concluded that "[t]he prosecutor's comments were consistent with her right to argue from the evidence and its reasonable inferences." *Id*.

Moreover, as pointed out above, the trial court instructed the jury that the attorneys' arguments were not evidence and that the jury should consider only the admissible evidence when reaching a verdict.  *See* 4/9/12 Trial Tr.  at pp. 50-51 (ECF No. 14-8, PageID.756-57).  Because juries are presumed to follow a court's instructions to them, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), any constitutional error could not have had a substantial and injurious effect on the jury's verdict and was harmless.

### 6.  Conclusion on Petitioner's Prosecutorial-Misconduct Claims

The prosecutor's questions and comments did not infect the trial with such unfairness as to make the resulting conviction a denial of due process.  And the state appellate court's rejection of Petitioner's prosecutorial-misconduct claims was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner, therefore, has no right to relief on his claims about the prosecutor.

## B.  The Trial Court's Ruling on "Other Acts" Evidence

Petitioner alleges next that the trial court infringed on his right to due process and abdicated its duty to limit the evidence to relevant and material matters by allowing the prosecutor to inject "other acts" evidence about his violence

toward the complainant's mother.  *See* Am. Pet. (ECF No. 9, PageID.48);

Defendant-Appellant's Brief on Appeal (ECF No. 14-10, PageID.835-36).

The Michigan Court of Appeals reviewed this claim for "plain error

affecting [Petitioner's] substantial rights" because Petitioner did not object to the

introduction of evidence of his violent behavior toward the complainant's mother.

*See Martin*, 2013 WL 3771210, at *2.  The Court of Appeals then determined that

the evidence was relevant and admissible under state law and that Petitioner's

substantial rights were not affected by the testimony.  *Id*.

This Court finds no merit in Petitioner's claim because "[t]here is no clearly

established Supreme Court precedent which holds that a state violates due process

by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v.*

*Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Thus, "there is no Supreme Court

precedent that the trial court's decision could be deemed 'contrary to,' under

AEDPA," *id*. at 513, and Petitioner has no right to relief on his challenge to the

trial court's admission of "other acts" evidence.

## C.  Trial Counsel

The third habeas claim alleges ineffective assistance of trial counsel.

Petitioner asserts that his trial attorney was ineffective for failing to object to the

"other acts" evidence and the prosecutor's conduct.  *See* Am. Pet. (ECF No. 9,

PageID.49).

The Michigan Court of Appeals stated on review of this claim that Petitioner was not denied effective assistance of counsel as a result of defense counsel's failure to object. According to the Court of Appeals, Petitioner failed to show that the prosecutor committed misconduct or that evidence was wrongfully admitted. The Court of Appeals concluded that defense counsel was not ineffective for failing to make futile objections. *See Martin*, 2013 WL 3771210, at *3.

### 1. *Strickland v. Washington*

The "clearly established Federal law" for Petitioner's claim is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions

20

'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693). In a habeas case, moreover, review of an ineffective-assistance-of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 578 U.S. 113, __, 136 S. Ct. 1149, 1151 (2016) (*per curiam*). "When § 2254(d) applies, the question is . . . whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## 2. Application of *Strickland*

The "other acts" evidence at Petitioner's trial was relevant evidence because it explained why the complainant did not resist Petitioner or initially disclose the abuse. Because the evidence was relevant and admissible under state law, defense counsel was not ineffective in the constitutional sense for failing to object to the evidence. As for the prosecutor's questions and remarks, they were proper, and

any prejudice was mitigated by the trial court's jury instructions that the attorneys' remarks were not evidence.

Defense counsel's failure to object to the "other acts" evidence and the prosecutor's conduct did not amount to deficient performance, and the alleged deficiencies did not prejudice Petitioner. Thus, defense counsel satisfied *Strickland's* deferential standard, and the state court's rejection of Petitioner's claim satisfied AEDPA's deferential standard. Petitioner has no right to relief on his claim of ineffective assistance.

## D. Cumulative Effect of Errors

The fourth habeas claim alleges that the cumulative effect of trial errors was so prejudicial that Petitioner was denied a fair trial. *See* Am. Pet. (ECF No. 9, PageID.51). The Michigan Court of Appeals stated on direct appeal that Petitioner's argument failed because there were "no errors to accumulate into any prejudicial effect[.]" *Martin*, 2013 WL 3771210, at *3.

This Court agrees with the Michigan Court of Appeals and finds no merit in Petitioner's argument for an additional reason: "[T]he Supreme Court has not recognized cumulative error as a basis for relief in non-capital cases." *Kissner v. Palmer*, 826 F.3d 898, 903-04 (6th Cir. 2016) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). Therefore, it cannot be said that the decision of the

Michigan Court of Appeals was contrary to any Supreme Court decision or warrants habeas relief under AEDPA. *Lorraine,* 291 F.3d at 447.

## E. Trial Counsel and the Scoring of Offense Variable 11

The fifth habeas claim alleges that Petitioner's trial attorney was ineffective for proposing, and not objecting to, the score for offense variable 11 of the Michigan sentencing guidelines. Petitioner states that the error caused him to be sentenced outside the appropriate minimum guidelines. *See* Am. Pet., Attachment A (ECF No. 9, PageID.57).

### 1. The State Trial Court's Decision

Petitioner first raised this claim in his motion for relief from judgment. The trial court denied Petitioner's claim because it thought that Petitioner had raised the claim on direct appeal. The court stated that Petitioner was precluded from re-litigating the issue and that the court was bound by the appellate court's decision. *See Martin*, Wayne County Cir. Ct. No. 11-012737 (ECF No. 14-13, PageID.1072).

Petitioner did raise an ineffective-assistance-of-counsel claim on direct appeal, but the basis for the claim was defense counsel's failure to object to the other-acts evidence and the prosecutor's conduct. Petitioner did not raise a claim about defense counsel's failure to object to the scoring of offense variable 11. So, the trial court was mistaken when it stated that Petitioner had raised his claim on

23

direct appeal, and because no state court adjudicated the merits of Petitioner's claim, this Court's review of the claim is *de novo*.

## 2. The Merits

To properly evaluate Petitioner's ineffectiveness claim, the Court looks to his underlying claim about offense variable 11, which addresses criminal sexual penetration. Mich. Comp. Laws § 777.41(1). Fifty points is the correct score if two or more criminal sexual penetrations occurred. Mich. Comp. Laws § 777.41(1)(a). Twenty-five points is proper if one criminal sexual penetration occurred. Mich. Comp. Laws § 777.41(1)(b). The score should be zero if no criminal sexual penetration occurred. Mich. Comp. Laws § 777.41(1)(c).

When scoring offense variable 11, "a trial court may not count a sexual penetration that formed the basis for the conviction, MCL 777.41(2)(c), but may score all other 'sexual penetrations of the victim by the offender arising out of the sentencing offense,' MCL 777.41(2)(a)." *People v. Baskerville*, 333 Mich. App. 276, 297; 963 N.W.2d 620, 635 (2020). The Michigan Supreme Court has "defined 'arising out of' to suggest a causal connection between two events of a sort that is more than incidental." *People v. Johnson*, 474 Mich. 96, 101; 712 N.W.2d 703, 706 (2006). In other words, there must be "[s]omething that 'aris[es] out of,' or springs from or results from something else, has a connective

relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id.*

Petitioner claims that defense counsel proposed fifty points for offense variable 11, but the record indicates that the prosecutor asked the trial court to change the score from zero to fifty points. *See* 4/25/12 Sentencing Tr. at pp. 3-6 (ECF No. 14-9, PageID.784-86). But Petitioner's allegation that defense counsel did not object to the change in the score is correct. *See id.*

The complainant, however, testified that the sexual activity between him and Petitioner happened in his bedroom about two or three times a week, from the time he was fourteen until he was almost sixteen. *See* 4/4/12 Trial Tr. at pp. 219-21 (ECF No. 14-6, PageID.534-36). The sexual incidents occurred more than three times, *id.* at pp. 223-25, PageID.538-40, and there was a routine to the incidents: he and Petitioner would perform oral sex on each other and then he would penetrate Petitioner or Petitioner would penetrate him. *Id.* at pp. 222, 244, PageID.537, 559.

The trial court could have concluded from the complainant's testimony that more than two sexual penetrations arose out of the sentencing offenses. Therefore, fifty points was an appropriate score for offense variable 11, and an objection to the score would have been futile. "[T]he failure to make futile objections does not

constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016). Petitioner has no right to relief on his claim.

## F.  Trial Counsel and the Plea Offer

Petitioner alleges next that his trial attorney's deficient performance and erroneous advice prevented him from taking advantage of a favorable plea offer. *See* Am. Pet. (ECF No. 9, PageID.57). Petitioner asserts that, although the prosecutor offered a sentence below the minimum guidelines, defense counsel failed to inquire into the terms of the deal. *See* Am. Pet., Attachment A (ECF No. 9, PageID.69-70). Petitioner also contends that defense counsel compounded the error by failing to inform him of the sentencing guidelines and thereby prevented him from making an informed decision between pleading guilty and going to trial. *See id*. at PageID.70.

Petitioner first raised this issue in his motion for relief from judgment. The trial court rejected the claim on the mistaken basis that Petitioner had raised the claim on direct appeal. Because the State's appellate courts also did not address the claim on the merits, this Court's review is *de novo*.

### 1.  Clearly Established Federal Law

Defendants in criminal cases are entitled to effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The Supreme Court's decision

in *Strickland* applies to ineffective-assistance-of-counsel claims when the ineffective assistance results in the rejection of a plea offer and the defendant is convicted at the ensuing trial. *See id.* at 163. In those circumstances,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164.

### 2. The Pretrial Proceedings

At the arraignment in Wayne County Circuit Court on January 12, 2012, the trial court gave the parties until February 10, 2012 to negotiate a plea bargain. The court stated that if there were no plea by then, they would go to trial. *See* 1/12/12 Arraignment Tr. at p. 6 (ECF No. 14-3, PageID.293).

On February 10, 2012, defense counsel requested an adjournment because the parties had been unable to schedule a polygraph examination. The trial court agreed to a two-week adjournment. *See* 2/10/12 Final Conference Tr. at pp. 3-4 (ECF No. 14-4, PageID.302-03).

Two weeks later, on Friday, February 24, 2012, Petitioner still had not taken a polygraph test, but the prosecutor stated that she had made an offer "under the bottom of the guidelines." *See* 2/24/12 Final Conference Tr. at p. 4 (ECF No. 14-

5, PageID.309).  When the trial court asked whether there was a possibility that the case would be resolved through a plea agreement if Petitioner failed the polygraph test, defense counsel stated that he could not make that decision yet and that he would have to talk to Petitioner some more.  *See id*. at pp.5-6, PageID.310-11.

The prosecutor then informed the trial court that she would not dismiss the case if Petitioner passed the test.  *See id*. at p. 6, PageID.311.  The trial court concluded that it did not have to be concerned about a polygraph test.  The court pointed out that the prosecution was not going to dismiss the case if Petitioner passed the test, the test results would not be usable in court, and defense counsel could not say whether the case would be resolved with a plea if Petitioner failed the test.  *See id*. at pp. 6-7, PageID.311-312.

Defense counsel then asked the court for a special pretrial in one week.  The court agreed to schedule the special pretrial on the following Friday, but the court stated that after the next pretrial, there would be no reconsideration, and they would go to trial.  *See id.* at p. 9, PageID.314.  There is no record of a subsequent special pretrial, and the trial commenced on Wednesday, April 4, 2012, without any mention of a polygraph examination or any plea negotiations.  *See* 4/4/12 Trial Tr. at pp. 3-7 (ECF No. 14-6, PageID.318-22).

### 3.  Counsel's Alleged Failure to Inquire about the Plea Offer

Petitioner alleges that his attorney failed to inquire into the terms of the prosecutor's plea offer.   But Petitioner was released on bond before trial, and it appears that he was present at the pretrial conference on February 24, 2012, when the prosecutor stated that she had offered a sentence below the minimum sentencing guidelines.  There is no indication in the record that the prosecutor made a formal plea offer that included any additional concessions.

The prosecutor apparently indicated on the trial file that she had received authorization to offer a plea of "8–10," but it is not known whether the prosecutor extended such an offer to defense counsel.  *See* People-Appellee's Answer to Defendant's Application for Leave to Appeal in the Michigan Supreme Court at p. 13 n. 43 (ECF No. 14-15, PageID.1234).  In fact, the trial prosecutor recalled that she did not engage in plea negotiations with defense counsel because Petitioner was unwilling to enter a plea.  *See id*. at pp.16-17, PageID.1237-38.

The Final Pre-trial Conference Summary and Firm Trial Date Contract confirms that there was no final settlement offer.  *See id*., Appendix A, PageID.1259-60.  Petitioner had no right to be offered a plea agreement, and because the record indicates that the prosecutor did not make a formal plea offer, whether defense counsel's performance resulted in prejudice under *Strickland* is not an issue.  *Cooper*, 566 U.S. at 168.

29

### 4.  Information about the Plea Offer and Counsel's Advice

Petitioner alleges that his trial attorney failed to inform him of the sentencing guidelines so that he could make an informed choice about whether to enter a plea or go to trial.  The Supreme Court stated in *Cooper*, that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id*.

Petitioner, however, was informed of the maximum sentence of life imprisonment at his arraignment in circuit court, *see* 1/12/12 Arraignment Tr. at p. 4 (ECF No. 14-3, PageID.291), and he admits to knowing that the prosecution offered a plea deal that called for a sentence below the minimum guidelines.  So, regardless of how the sentencing guidelines ultimately were calculated, he was aware that there was a benefit to pleading guilty.[4]  In addition, the fact that defense counsel asked for a special pretrial shortly before trial and told the trial court that he would have to talk further with Petitioner suggests that defense counsel was communicating with Petitioner.

---

[4] The sentencing guidelines for Petitioner's minimum sentence were finalized at his sentencing and determined to be 126 to 210 months (10½ to 17½ years). *See* 4/25/12 Sentencing Tr. at p. 5 (ECF No. 14-9, PageID.786).  The prosecutor asked the trial court to sentence Petitioner to at least 210 months in prison with a maximum sentence of fifty years. *Id*. at p.7, PageID.788.  The trial court chose to sentence Petitioner to a minimum term of fifteen years and a maximum term of sixty years. *Id*. at p. 9, PageID.790.

Petitioner also claims that defense counsel gave him erroneous advice about whether to plead guilty or go to trial. To support this claim, Petitioner avers in an affidavit signed on March 18, 2015, that his attorney told him the prosecution had no DNA, witnesses, or physical evidence and that no jury would convict him. *See* Affidavit of Marco D. Martin in Support of MCR 6.500 [Motion], ¶ g. (ECF No. 9, PageID.87).

It is true that there was no DNA or physical evidence, and the only prosecution witness besides the complainant was the complainant's mother who did not witness the crimes. Thus, Petitioner has failed to prove that his attorney gave him erroneous advice what to expect at trial. Although defense counsel was mistaken if he said that no jury would convict Petitioner, a defense attorney's "erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Cooper*, 566 U.S. at 174.

The fact that Petitioner testified at trial and denied any wrongdoing suggests that it was his own decision, and not erroneous advice from counsel, that resulted in him going to trial and rejecting an offer to plead guilty. Even at his sentencing, Petitioner failed to admit guilt. Although he apologized for the pain that he may have caused the complainant's family and for what he put his family through, he denied being a predator, and he claimed to be "deeply shocked" for standing before the court and facing a significant amount of time of prison. He seemed to blame

31

his conviction on not being more careful about the people with whom he associated. *See* 4 /25/12 Sentencing Tr. at pp. 7-8 (ECF No. 14-9, PageID.788-89).

Petitioner has failed to show that there was a firm plea agreement, that his attorney failed to investigate the terms of an agreement, and that his attorney gave him erroneous advice which caused him to forfeit a favorable plea offer. Accordingly, the Court denies relief on Petitioner's claim about defense counsel's performance during the pretrial stage of the criminal proceedings.

## G. Appellate Counsel

The seventh habeas claim alleges that Petitioner's appellate attorney was constitutionally ineffective during the direct appeal. Petitioner contends that the attorney failed to master the case record and failed to investigate and raise significant, obvious, and meritorious issues. *See* Am. Pet. (ECF No. 9, PageID.57).

Respondent argues that Petitioner's claim is procedurally defaulted because Petitioner failed to comply with Michigan Court Rule 6.508(D)(3), which normally requires defendants to raise all available claims on direct appeal. *See* Answer in Opp'n to Pet. (ECF No. 13, PageID.228-30). This rule does not apply to claims of ineffective assistance of appellate counsel. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

It further appears that the state trial court adjudicated Petitioner's claim on the merits during post-conviction review.  The court stated that appellate counsel's performance was not deficient and that Petitioner was not prejudiced by appellate counsel's failure to raise any of the issues contained in the post-conviction motion. The court concluded that Petitioner's ineffective-assistance-of-counsel argument failed on the merits.  *See Martin*, Wayne County Cir. Ct. No. 11-012737 (ECF No. 14-13, PageID.1072-74).

The Court concludes that Petitioner's claim about appellate counsel is not procedurally defaulted.  The Court proceeds to the merits of Petitioner's claim.

### 1.  Clearly Established Federal Law

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To prevail on his claim about appellate counsel, Petitioner must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues.  *Id*. (citing *Strickland,* 466 U.S. at 687-91, 694).

> "[A]n appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995) (citing *Page v. United States,* 884 F.2d 300, 302 (7th Cir. 1989)).  A "dead-bang winner" is an issue which was obvious from the trial record, *see e.g.,*

33

> *Matire v. Wainwright,* 811 F.2d 1430, 1438 (11th Cir. 1987) (counsel's failure to raise issue which " 'was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript' was deficient performance), and one which would have resulted in a reversal on appeal." *Id.*

*Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

But an appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  In fact,

> the process of " 'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

### 2. Application

The habeas claims that Petitioner's appellate attorney did not raise on direct appeal are the claims about the scoring of offense variable 11, defense counsel's performance during the pretrial proceedings, and the imposition of lifetime electronic monitoring.  For the reasons given by the Court in the discussion of those issues, the omitted claims were not dead-bang winners or clearly stronger than the claims that appellate counsel raised on direct appeal.  Thus, appellate

counsel's performance was not deficient.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Appellate counsel's performance also was not prejudicial, because there is not a substantial probability that Petitioner would have prevailed on appeal if counsel had raised the issues.  Further, the state trial court's rejection of Petitioner's claim about appellate counsel was not contrary to, or an unreasonable application of, *Strickland* or *Robbins.*  Petitioner has no right to relief on his claim about appellate counsel.

## H.  Electronic Monitoring

Petitioner's eighth and final claim alleges that the trial court erroneously sentenced him to lifetime electronic monitoring ("LEM") upon his release from prison.   According to Petitioner, the prosecution only offered proof that the alleged incidents occurred before the statute on LEM became effective and, therefore, application of the LEM statute to him violated *ex post facto* laws.  *See* Am. Pet., Attachment A (ECF No. 9, PageID.57, 65-66); Brief in Reply to the State's Answer (ECF No. 16, PageID.1292-93).  The state trial court denied relief on Petitioner's claim because Petitioner was convicted after the statute became effective.  *See Martin*, Wayne County Cir. Ct. No. 11-012737-01 (ECF No. 14-13, PageID.1074).

### 1. Clearly Established Federal Laws

The United States Constitution has two ex post facto clauses. *See* U.S. Const. Art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."), and U.S. Const. Art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law . . . ."). The following are considered *ex post facto* laws:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. 386, 390–91, 1 L. Ed. 648 (1798).

Michigan's LEM statutes change or increase the punishment for certain offenses even though "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (footnote omitted) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867)). In other words, the *ex post facto* prohibition "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Id*. at 30.

The state trial court erred when it determined that Michigan's LEM statutes applied to Petitioner because he was *convicted* after the statutes became effective. The Supreme Court's precedents make clear that the controlling date is the date of the crime.  Nevertheless, as the following discussion demonstrates, some crimes were committed after the LEM statutes were enacted.  Thus, the state trial court's rejection of Petitioner's claim was not contrary to, or an unreasonable of, Supreme Court precedent.

### 2.  Application of the Law

Michigan's LEM statute provides that "[a] person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring . . . ."  Mich. Comp. Laws § 750.520n(1) (footnote omitted).

Although the complainant in Petitioner's case testified that nothing of a sexual nature occurred between Petitioner and him before his fourteenth birthday, *see* 4/4/12 Trial Tr. at p. 195 (ECF No. 14-6, PageID.510), the statute on first-degree criminal sexual conduct reads as follows:

> 2) Criminal sexual conduct in the first degree is a felony punishable as follows:
>
> (a) Except as provided in subdivisions (b) and (c), by imprisonment for life or for any term of years.

(b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.

(c) For a violation that is committed by an individual 18 years of age or older against an individual less than 13 years of age, by imprisonment for life without the possibility of parole if the person was previously convicted of a violation of this section or section 520c, 520d, 520e, or 520g[1] committed against an individual less than 13 years of age or a violation of law of the United States, another state or political subdivision substantially corresponding to a violation of this section or section 520c, 520d, 520e, or 520g committed against an individual less than 13 years of age.

(d) *In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under* [Mich. Comp. Laws § 750.]*520n.*

Mich. Comp. Laws § 750.520b(2) (emphasis added). Simply stated, "under MCL 750.520b(2)(d), the punishment of lifetime electronic monitoring must be imposed for all [first-degree criminal sexual conduct] sentences in which the offender is not imprisoned for life without the possibility of parole under § 520b(2)(c)." *People v. Comer*, 500 Mich. 278, 300; 901 N.W.2d 553, 564–65 (2017).

"The LEM provisions under MCL 750.520b(2)(d) and MCL 750.520n became effective on August 28, 2006." *People v. Freese*, No. 350388, 2021 WL 219557, at *2 (Mich. Ct. App. Jan. 21, 2021) (unpublished decision citing Mich. Comp. Laws § 750.520n and 2006 PA 169; 2006 PA 171), *appeal denied*, 963 N.W.2d 343 (Mich. 2021). And the Michigan Supreme Court has determined that

LEM is part of the sentence itself. *See People v. Cole*, 491 Mich. 325, 335; 817 N.W.2d 497, 502 (2012).

The complainant's date of birth was November 28, 1991, *see* 4/4/12 Trial Tr. at p. 186 (ECF No. 14-6, PageID.501), and he testified that Petitioner began having sexual relations with him after he turned fourteen, see *id*. at p. 195, PageID.510. He would have been fourteen on November 28, 2005, which was before the LEM statutes became effective.  However, he also thought that he stopped having any contact with Petitioner when he was fifteen, *see id.* at p. 235, PageID.550, and he would have been fifteen on November 28, 2006.  Elsewhere, the complainant testified that the sexual activity with Petitioner occurred until he was "going on" sixteen.  *Id*. at pp. 219-21, PageID.534-36.  He would have been sixteen on November 28, 2007.

The complainant's testimony established that he continued to have sexual relations with Petitioner after August 28, 2006, the effective date of the LEM statutes.  Therefore, the statutes did not have a retroactive effect, and Petitioner's rights under the Constitution's *Ex Post Facto* Clauses were not violated.

## IV.  CONCLUSION

Habeas claims five and six regarding Petitioner's trial attorney lack merit, and the state courts' adjudications of claims one through four and seven on the merits were not contrary to Supreme Court precedent, an unreasonable application of

Supreme Court precedent, or based on an unreasonable determination of the facts. The state trial court's rejection of Petitioner's *ex post facto* claim also did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. The Court, therefore, denies the amended habeas corpus petition.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Nevertheless, if Petitioner appeals this decision, he may proceed *in forma pauperis* on appeal without further authorization from the Court, because the Court granted him permission to proceed *in forma pauperis* in this Court, *see* ECF No. 4, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

 s/Arthur J. Tarnow
ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated: November 16, 2021